IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal Action No. **3:12-CR-126-L** |
| | § | |
| **LUCIAN LEE SPANN** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss the Indictment, filed August 17, 2012. After careful review of the motion, response, record, and applicable law, the court **denies** Defendant's Motion to Dismiss the Indictment.

**I.  Procedural and Factual Background**

In this criminal action, by Indictment filed May 1, 2012, Defendant Lucian Lee Spann ("Defendant" or "Spann") has been charged with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). In August 2011, a Dallas police officer observed Defendant standing near a 1996 Toyota Camry with all four doors and the trunk open in a local motel parking lot. The officer checked the car's license plates and learned that the car had been reported stolen. When the officer directed Defendant to get on the ground, Defendant began to flee from the officer on foot. Eventually, the officer caught up with Defendant and was in the process of taking him into custody when a CZ 7.65 millimeter semi-automatic handgun fell from Defendant's waistband. Subsequent investigation revealed that the handgun was not manufactured in Texas.

Prior to the Indictment, Defendant had been convicted fourteen times between 1987 and 2011 in Dallas County, Texas, for offenses punishable by at least one year in prison.

## II. Analysis

Defendant has moved to dismiss the Indictment on the basis that 18 U.S.C. § 922(g)(1) is unconstitutional, both facially and as applied to him. Defendant's challenges are based on the Supreme Court's recent decision in *National Federation of Independent Businesses v. Sebellius* ("*National Federation*"), --- U.S. ----- , 132 S. Ct. 2566 (2012), which Defendant claims "has worked a sea-change in the law concerning what it means to 'possess' an item for purposes of invoking federal jurisdiction under the Commerce Clause." Mot. to Dismiss at 2.

### A. Facial Challenge to the Constitutionality of 18 U.S.C. § 922(g)(1)

Defendant's facial challenge to the constitutionality of § 922(g)(1) is two-pronged. First, Defendant argues that in light of *National Federation*, § 922(g)(1) is facially unconstitutional because economic activity in the past is no longer sufficient to invoke jurisdiction. Second, relying on the decisions in *National Federation* and *United States v. Lopez*, 514 U.S. 549 (1995), and the dissent from denial of certiorari in *Alderman v. United States,* 131 S. Ct. 700 (2011) (Thomas, J., dissenting from denial of certiorari), Defendant contends that § 922(g)(1) is facially unconstitutional because it does not reflect the requirement that the firearm has "substantially affected" interstate commerce. Mot. to Dismiss at 6. Neither argument has merit.

Section 922(g)(1) provides that it is unlawful for any person convicted in any court of "a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign

**Memorandum Opinion and Order - Page 2**

commerce." 18 U.S.C. § 922(g)(1). The Fifth Circuit, in *United States v. Wallace*, 889 F.2d 580, 583 (5th Cir. 1989), *cert. denied*, 497 U.S. 1006 (1990), held that this section is a constitutional exercise of Congress's authority under the Commerce Clause. Since then, the Fifth Circuit has reaffirmed this holding on numerous occasions, including after the Supreme Court's commerce clause decision in *Lopez*.[1] *See United States v. Rawls*, 85 F.3d 240, 242 (5th Cir. 1996) (holding that "neither the holding in *Lopez* nor the reasons given therefor constitutionally invalidate § 922(g)(1)"); *see also United States v. Schmidt*, 487 F.3d 253, 255 (5th Cir. 2007) (holding that the Supreme Court's commerce clause decisions in *Lopez*, *Jones v. United States*, 529 U.S. 848 (2000), and *United States v. Morrison*, 529 U.S. 598 (2000), "do not alter th[e] conclusion" § 922(g)(1) is constitutional); *United States v. Daugherty*, 264 F.3d 513, 518 (2001), *cert. denied*, 534 U.S. 1150 (2002) ("[Defendant] urges us to reconsider the interstate commerce element of § 922(g)(1) in light of two recent, intervening decisions: [*Morrison* and *Jones*]. . . . Neither *Jones* nor *Morrison* affects or undermines the constitutionality of § 922(g)."); *United States v. Baltazar-Lopez*, No. 00-21130, 2001 WL 1067700, at *1 (5th Cir. Aug. 16, 2001) (per curiam), *cert. denied*, 534 U.S. 1147 (2002) ("We have declined to entertain the advanced constitutional challenge to 18 U.S.C. § 922(g)(1). . . . [the decisions in *Jones* and *Morrison*] do not affect our consistent determination respecting the constitutionality of 18 U.S.C. § 922(g)."). Because the constitutionality of § 922(g)(1) has been so frequently litigated before the Fifth Circuit to the same conclusion, the court has often stated that "the constitutionality of § 922(g) is not open to question." *Daugherty*, 264 F.3d at 518 (citing *United States v. De Leon*, 170 F.3d 494, 499 (5th Cir. 1999), *cert. denied*, 528 U.S. 863 (1999)).

---

[1] In *Lopez*, the Supreme Court invalidated 18 U.S.C. § 922(q), which purported to criminalize the possession of a firearm within a specified proximity to a school, as exceeding Congress's authority under the Commerce Clause. 514 U.S. at 551.

Defendant urges that *National Federation* constitutes a dramatic shift in the Supreme Court's Commerce Clause jurisprudence—so much so that it implicitly overruled the Fifth Circuit's decisions consistently upholding the constitutionality of § 922(g)(1). Spann points to Chief Justice Roberts's Commerce Clause discussion in *National Federation*—which, notably, no other justice joined—for the proposition that the Commerce Clause requires that any targeted individuals targeted by § 922(g)(1) be "*currently* engaged" in a relevant market. According to Defendant, Chief Justice Roberts's focus in *National Federation* on the need for a temporal nexus to establish whether commerce is "actually affected," suggests that mere economic activity in the past is no longer sufficient to invoke jurisdiction under § 922(g)(1). Mot. to Dismiss at 6. The court disagrees.

The issue before the Supreme Court in *National Federation* was whether Congress had the power under Article I of the Constitution to enact a provision in the Patient Protection and Affordable Care Act ("PPACA") requiring non-exempted federal income taxpayers to maintain a minimum level of health insurance or otherwise pay a tax penalty. 132 S. Ct. at 2580, 2595-600. The Court upheld the minimum coverage provision as a valid exercise of Congress's taxing power. *Id.* at 2594-600. Five justices separately concluded that the minimum coverage provision was not authorized by Congress's commerce power; *however, no single opinion was joined by a majority of the Court on this issue*. *See id.* at 2585-91 (Roberts, C.J.); *id.* at 2644-50 (Scalia, Kennedy, Thomas, Alito, JJ., dissenting). Chief Justice Roberts wrote the opinion of the Court upholding the minimum coverage provision under the taxing power, which was joined by Justices Ginsburg, Breyer, Sotomayor, and Kagan. *Id.* at 2594-95. Chief Justice Roberts also wrote a separate opinion expressing the view that Congress could not require individuals to purchase health insurance under its commerce power because the Commerce Clause only gives Congress the power to *regulate*

**Memorandum Opinion and Order - Page 4**

commerce, not to *compel* it. *Id.* at 2585-93 (Roberts, C.J.).[2] According to Chief Justice Roberts, the minimum coverage provision did not regulate existing commercial *activity*—rather, it attempted to regulate *inactivity*, on the ground that the failure to purchase health insurance affects interstate commerce. *Id.* Chief Justice Roberts, however, only wrote for himself on this issue. In a separate opinion, styled as a "joint dissent," Justices Scalia, Kennedy, Thomas, and Alito similarly argued that the Commerce Clause did not authorize Congress to compel entry into commerce. *Id.* at 2642-50 (Scalia, Kennedy, Thomas, Alito, JJ., dissenting). As indicated above, the dissenters did not join any portion of Chief Justice Roberts's opinion, nor did they agree to the judgment of the Court. *Id.* at 2642-77 (Scalia, Kennedy, Thomas, Alito, JJ., dissenting).

As one court recently noted, there has been considerable debate whether the Chief Justice's Commerce Clause discussion is dicta or binding precedent. *United States v. Henry*, 688 F.3d 637, 641 n.5 (9th Cir. 2012) (citing David Post, *Commerce Clause "Holding v. Dictum Mess" Not So Simple*, The Volokh Conspiracy, (July 3, 2012, 8:17 AM), http://www.volokh.com/2012/07/03/commerce-clause-holding-v-dictum-mess-not-so-simple/. While some courts have regarded the Chief Justice's Commerce Clause discussion as the opinion of the Court, others have viewed his opinion as a concurrence. *Compare United States v. Williams*, No. 12-60116-CR-RNS, 2012 WL 3242043, at *3 (S.D. Fla. Aug. 7, 2012) (stating that Chief Justice

---

[2] Chief Justice Roberts argued that his analysis of the individual mandate under the Commerce Clause was necessary to his finding that the mandate was a constitutional exercise of Congress's separate congressional power to tax. *National Fed'n*, 132 S. Ct. at 2600-01. He reasoned that he would have to evaluate the constitutionality of the mandate under the Commerce Clause because "the statute reads more naturally as a command to buy insurance than as a tax." *Id.* at 2600. Because the Commerce Clause did not authorize such a command and because the Court has a duty to construe a statute to save it, Chief Justice Roberts believed that he had to adopt a saving construction of interpreting the mandate as a tax. *Id.* at 2600-01. Justice Ginsburg, joined by Justices Breyer, Sotomayor, and Kagan, criticized the Chief Justice for "undertak[ing] a Commerce Clause analysis that [wa]s not outcome determinative." *Id.* at 2629 n.12 (Ginsburg, J., concurring in part and dissenting in part). Because the Court ultimately upheld the individual mandate as a proper exercise of Congress's power to tax, Justice Ginsburg expressed that this made the "Chief Justice's Commerce Clause essay all the more puzzling." *Id.* at 2629.

Roberts was "writing for the Court" when discussing Congress's commerce power) *with United States v. Moore*, No. CR-12-6023-RMP, 2012 WL 3780343, at *3 (E.D. Wash. Aug. 31, 2012) (finding that in *National Federation*, Chief Justice Roberts, wrote "a concurring opinion" finding that the Commerce Clause did not authorize the health care statute because Congress cannot regulate inactivity).³

To find the Chief Justice's Commerce Clause discussion binding as legal precedent, as Defendant would have this court hold, one must combine the opinions of the four dissenting Justices with the Chief Justice's opinion, even though the dissenters did not join *any* portion of the Chief Justice's opinion, or concur in the judgment. The issue of whether concurring and dissenting votes

---

³ In describing Chief Justice Roberts's commerce clause discussion as a "concurring opinion," the *Moore* court was applying the narrowest-grounds doctrine endorsed by the Supreme Court in *Marks v. United States*, 430 U.S. 188, 193 (1997). 2012 WL 3780343, at *3. "The Supreme Court has stated that when a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 348 (5th Cir. 2008) (internal citations and quotation marks omitted). This court believes that reliance on *Marks* in determining the precedential value of Chief Justice Roberts's commerce clause discussion is misplaced because the "purpose of *Marks*' narrowest grounds test is to allow a lower court to derive a rationale from multiple opinions *when none of them are joined by a majority* of the justices." *Id.* at 349 (emphasis added). In *National Federation*, Chief Justice Roberts's opinion upholding the constitutionality of the individual mandate under the Tax Clause commanded a majority of the justices. In other words, there was a single rationale explaining that particular outcome of the case. Moreover, it seems inappropriate to apply the *Marks* rule to *National Federation* to derive a holding regarding the commerce clause, where the majority agreement among the justices regarding the individual mandate's unconstitutionality under the commerce clause is *not* between "those Members who *concurred in the judgments*." *See, e.g.*, *Vasquez v. Hillery*, 474 U.S. 254, 262 n.4 (1986) (noting that the narrowest grounds doctrine "refers only to the manner in which one may discern a single holding of the Court in cases in which no opinion on the issue in question has garnered the support of a majority" and stating that the doctrine was "inapplicable" to a portion of an opinion "to which five Justices expressly subscribed"); *United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007) ("In our view, *Marks* does *not* direct lower courts interpreting fractured Supreme Court decisions to consider the positions of those who dissented. *Marks* talks about those who 'concurred in the judgment[ ],' not those who did not join the judgment.") (citation omitted); *United States v. Freedman Farms, Inc.*, 786 F. Supp. 2d 1016, 1021 (E.D.N.C. 2011) (noting that "the plain wording of *Marks* does not contemplate considering the positions of dissenting Justices"). *See also* Jonathan H. Adler, *Once More, with Feeling: Reaffirming the Limits of Clean Water Act Jurisdiction*, in The Supreme Court and the Clean Water Act: Five Essays 81, 93-94 (L. Kinvin Wroth ed., Vt. Law Sch. 2007 ) (arguing that the *Marks* rule excludes consideration of dissents not concurring in any part of the judgment of the court); Michael L. Eber, Comment, *When the Dissent Creates the Law: Cross-Cutting Majorities and the Prediction Model of Precedent*, 58 EMORY L.J. 207, 208 (2008) (noting that "the *Marks* rule also bars counting dissenting opinions"). Even the Supreme Court itself has recognized that the *Marks* test is "more easily stated than applied," and that it has "baffled and divided the lower courts that have considered it." *Nichols v. United States*, 511 U.S. 738, 745-46 (1994). As such, *Marks* is of no use as to the proper interpretation of *National Federation*'s discussion regarding the Commerce Clause.

may be counted together to create a new legal rule has been addressed by several courts. While some courts have combined a dissent with a concurrence to create a binding majority decision, other courts have declined to do so. *Compare King v. Palmer*, 950 F.2d 771, 783 (D.C. Cir. 1991), *cert. denied*, 505 U.S. 1229 (1992) ("[W]e do not think we are free to combine a dissent with a concurrence to form a *Marks* majority.") *with United States v. Johnson*, 467 F.3d 56, 65 (1st Cir. 2006), *cert. denied*, 552 U.S. 948 (2007) ("[W]e do not share the reservations of the D.C. Circuit about combining a dissent with a concurrence to find the ground of decision embraced by a majority of the Justices.").

For purposes of Spann's motion, this court is not prepared to "read the conglomeration of the dissenting opinions of four Justices combined with the . . . opinion of Chief Justice John Roberts to constitute binding precedent interpreting the Commerce Clause in a manner relevant to Congressional authority to regulate" felon possession of firearms that have traveled in interstate commerce. *Moore*, 2012 WL 3780343, at *3. Even assuming, *arguendo*, that the "activity vs. inactivity" distinction is now part of Commerce Clause doctrine, the court concludes that it has no application here, where the statute in question does not *compel* individuals to act—let alone purchase a product—but rather *prohibits* individuals from acting. Chief Justice Roberts and the members of the joint dissent found the individual mandate an unconstitutional exercise of the Commerce Clause Power on the basis that Congress cannot regulate inactivity or commerce that Congress itself compelled—a problem that is not present here. *See National Fed.*, 132 S. Ct. at 2589 (Roberts, C.J.) ("The Framers gave Congress the power to *regulate* commerce, not to *compel* it . . . ."); *id.* at 2644 (Scalia, Kennedy, Thomas, Alito, JJ., dissenting) ("To be sure, *purchasing* insurance *is* "Commerce"; but one does not regulate commerce that does not exist by compelling its existence.").

Section 922(g)(1)'s jurisdictional element ensures that the statute is only triggered upon a felon's possession of a weapon that has *already* traveled in interstate commerce—not one that will at some point in the future, travel in interstate commerce. *Cf. id.* at 2590 (Roberts, C.J.) (stating that Congress cannot "dictate the conduct of an individual today because of prophesied future activity"). Therefore, § 922(g)(1), unlike the PPACA, regulates activity—not inactivity.

Defendant's argument that § 922(g)(1) does not reflect the requirement that the firearm has "substantially affected" interstate commerce is also unavailing. *National Federation* and the dissent from denial of certiorari in *Alderman* (which is not binding legal precedent) neither affect nor undermine *Lopez*'s holding that Congress may regulate intrastate activities that substantially affect interstate commerce. As noted earlier, the question of whether § 922(g)(1) remains a constitutional exercise of the Commerce Clause Power, post-*Lopez*, has been answered by the Fifth Circuit in the affirmative on several occasions. Thus, Spann is entitled to no relief on this claim.

### B. As-Applied Challenge to the Constitutionality of 18 U.S.C. § 922(g)(1)

Furthermore, Defendant, again relying on *National Federation*, argues that § 922(g)(1) is unconstitutional as applied to him because the Indictment fails to: (1) allege that he possessed the relevant firearm in an "economically active" manner, and (2) establish that the time elapsed between the purchase or acquisition of the firearm and the arrest was sufficiently recent to render Defendant an "active participant" in commerce. Mot. to Dismiss at 1-2. The court disagrees.

As indicated earlier, Defendant's possession of an out-of-state firearm clearly constitutes activity—not inactivity. Moreover, regulation of felon participation in the interstate market for firearms is within Congress's authority under the Commerce Clause. *See Scarborough v. United States*, 431 U.S. 563, 575 (1977) (holding that under the predecessor statute to § 922(g) only a

minimal nexus with commerce was required to demonstrate that felon possession of a firearm substantially affected commerce). Further, the indictment need not mention word-for-word the constitutional requirement that this activity have a substantial effect on interstate commerce. *See United States v. Gresham*, 118 F.3d 258, 264-65 (1997) (rejecting defendant's argument that the indictment was defective because it charged him with possessing a firearm "in or affecting interstate commerce," omitting the constitutional requirement of a "substantial effect").

Furthermore, the Fifth Circuit has explained that § 922(g)(1) "requires only a 'minimal nexus' between the firearm and interstate commerce." *Id.* at 264 (citing *Scarborough,* 431 U.S. at 575). The firearm need not have a *present* connection to interstate commerce in order to violate § 922(g)(1). *See United States v. Fitzhugh*, 984 F.2d 143, 146 (5th Cir. 1993), *cert. denied*, 510 U.S. 895 (1993) (rejecting defendant's argument that only possession of a firearm having a *present* connection to interstate commerce violates § 922(g)(1)). It is sufficient that the firearm traveled across state lines "at some point in the *past.*" *United States v. Cavazos*, 288 F.3d 706, 712 (5th Cir. 2002), *cert. denied*, 123 S. Ct. 253 (2002) (emphasis added); *see also Gresham*, 118 F.3d at 264 (noting that the "in or affecting commerce" element of § 922(g)(1) may be satisfied if the firearm possessed by a convicted felon "had traveled *previously* in interstate commerce") (emphasis added). This is so, "even if the defendant possessed the firearm entirely intrastate." *Cavazos*, 288 F.3d at 712.

Moreover, evidence that a firearm was manufactured in different state or country, standing alone, is sufficient to satisfy § 922(g)'s interstate commerce requirement. *See id.* at 712-13 (holding that there is a sufficient interstate commerce nexus to support a conviction under § 922(g)(1) when the evidence showed that the firearm was manufactured in California and possessed in Texas);

*Daugherty*, 264 F.3d at 518 (same where there was stipulated evidence that the firearm was manufactured in Egypt, imported through Tennessee, but possessed in Texas); *United States v. Kuban*, 94 F.3d 971, 973 (5th Cir. 1996), *cert. denied*, 519 U.S. 1070 (1997) (same where the firearm was manufactured in Belgium and possessed in Texas); *Rawls*, 85 F.3d at 243 (same where the firearm was manufactured in Massachusetts and possessed in Texas).

Thus, the Fifth Circuit has made clear that § 922(g)(1)'s interstate commerce requirement is satisfied by possession of a firearm that was manufactured in different state or country, and it need not be shown at what exact point in the past the weapon traveled across state lines. *Cavazos*, 288 F.3d at 712; *Rawls*, 85 F.3d at 242-43. Here, reports from the Bureau of Alcohol, Tobacco, Firearms and Explosives revealed that the firearm Defendant possessed was not manufactured in Texas. Thus, the firearm had to have traveled in interstate or foreign commerce in order for Defendant to possess the weapon in Texas. These reports, assuming they constitute legally admissible evidence, indicate that the firearm was manufactured in another state, which "is sufficient to establish a past connection between the firearm and interstate commerce." *Rawls*, 85 F.3d at 243. Therefore, the Indictment was not defective, and Spann is not entitled to have it dismissed.

### III. Conclusion

For the reasons herein stated, 18 U.S.C. § 922(g)(1) is neither unconstitutional on its face nor as applied to Spann. Accordingly, the court **denies** Defendant's Motion to Dismiss the Indictment.

**It is so ordered** this 24th day of September, 2012.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge